UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMES DURAL                          DOCKET NO. 6:08-cv-0281

VERSUS                               JUDGE DOHERTY

DISCOVER PROPERTY & CASUALTY   MAGISTRATE JUDGE HANNA
INSURANCE COMPANY, SLAY
TRANSPORTATION CO., INC., AND
CHRISTOPHER M. WILSON

## REPORT & RECOMMENDATION

(Rec. Doc. 46)

Pending before this Court is the plaintiff's motion for partial summary judgment on the issue of liability of Christopher Wilson, vicarious liability of his employer, Slay Transportation Co., Inc., and insurance coverage for that liability allegedly owed by Discover Property and Casualty Insurance Company. (Rec. Doc. 46). The motion is opposed. For the following reasons, the undersigned recommends that the motion be granted.

## I.    U<small>NDISPUTED</small> F<small>ACTUAL</small>  B<small>ACKGROUND</small>

This lawsuit arises out of a motor vehicle accident that occurred on March 23, 2007 in Iberia Parish, Louisiana.[1]  The collision occurred at approximately 6:20 in the evening.[2]   It was daylight, the weather was clear, and there were no visual obstructions.[3]  The plaintiff, James Dural, was employed by J.P. Thibodeaux as an automobile salesman, and the accident occurred while he was in the course and scope of his employment.[4]  After assisting his clients, Debra Manuel, Charlotte Manuel, and Quincy Manuel, at one of the J.P. Thibodeaux dealerships, it was decided that Mr. Dural and his clients would look at vehicles at a different J.P. Thibodeaux location.[5]  The Manuels got in their vehicle, Mr. Dural got in his vehicle, and the Manuels followed Mr. Dural to the other dealership.[6]  On the way, Mr. Dural travelled in a southerly direction on Louisiana Highway 675 toward U.S. Highway 90.[7]

---

[1]      Rec. Doc. 46-4 at 5.

[2]      Rec. Doc. 46-4 at 3-4; Rec. Doc. 46-5 at 3.

[3]      Rec. Doc. 46-3 at 3; Rec. Doc. 46-4 at 5, 6, 10; Rec. Doc. 46-5 at 3.

[4]      Rec. Doc. 46-3 at 2-3.

[5]      Rec. Doc. 46-3 at 2-3; Rec. Doc. 46-6 at 4-5..

[6]      Rec. Doc. 46-3 at 3.

[7]      Rec. Doc. 46-3 at 3; Rec. Doc. 46-5 at 5; Rec. Doc. 46-6 at 6..

At the time of the accident, traffic lights controlled the movement of all traffic through the intersection of Hwy. 675 and Hwy. 90.[8]  As Mr. Dural approached the intersection, the light controlling his lane of travel was red.[9]  He stopped for the red light.[10]  Mr. Dural observed the light as it turned green.[11]  He then looked into his rear view mirror to be sure that the Manuels were still right behind him, and he proceeded into the intersection.[12]  An eighteen-wheeler that was proceeding in a westbound direction of Highway 90, i.e, from Mr. Dural's left, collided with Mr. Dural's vehicle.[13]  Dural was injured in the accident and taken to the hospital by ambulance.[14]

According to Mr. Dural,

I asked her [Debra Manuel] to follow me back to the dealership on Highway 90.  So she did.  And we proceeded down Highway 675 to Highway 90.  And when we got to the intersection, there was a red light. So I stopped at the red light.  And there were other vehicles going down Highway 90 West.  And when the red light turned green, I glanced in my rearview mirror and noticed that my customers were still there, just to make sure.

---

[8]    Rec. Doc. 46-3 at 3; Rec. Doc. 46-5 at 6.

[9]    Rec. Doc. 46-3 at 3; Rec. Doc. 46-5 at 5.

[10]   Rec. Doc. 46-3 at 3; Rec. Doc. 46-5 at 6; Rec. Doc. 46-7 at 11-13.

[11]   Rec. Doc. 46-3 at 3.

[12]   Rec. Doc. 46-3 at 3.

[13]   Rec. Doc. 46-3 at 3.

[14]   Rec. Doc. 46-3 at 4.

-3-

*** 

Then I proceeded to cross the interstate and was struck by an 18-wheeler.[15]

The Manuels were all deposed, and they all confirmed that Mr. Dural entered the intersection on a green light before the truck entered the intersection, and they also confirmed that the truck failed to stop for a red light.[16]

The truck was being driven by defendant Christopher M. Wilson, an employee of Slay Transportation Company Inc., who was in the course and scope of his employment at the time of the accident.[17]  Mr. Wilson testified that, as he approached the intersection, he was distracted by a car behind him that was attempting to pass him.[18]  He admitted that he was not paying attention to the traffic light.[19]  He did not know if the light was red or green when he entered the intersection.[20]

Discover Property and Casualty Insurance Co. provided insurance policies to Slay Transportation Co., Inc., insuring it for liability arising out of the ownership and

---

[15]     Rec. Doc. 46-3 at 3.

[16]     Rec. Doc. 46-5 at 5, 7, 8, 12; Rec. Doc. 46-6 at 6-7, 10-11; Rec. Doc. 46-7 at 5, 7, 9.

[17]     Rec. Doc. 46-4 at 2.

[18]     Rec. Doc. 46-4 at 7.

[19]     Rec. Doc. 46-4 at 12.

[20]     Rec. Doc. 46-4 at 8.

operation of vehicles that Slay Transportation owned.[21]  When the accident occurred, Mr. Wilson was operating a truck owned by Slay Transportation as part of his employment duties.[22]

## II.   CONTENTIONS OF THE PARTIES

The plaintiff contends that the collision was solely caused by Mr. Wilson's negligence in disobeying a red traffic control light and proceeding into and through the intersection while the light was red.  The plaintiff further contends that, because Mr. Wilson was in the course and scope of his employment at the time of the accident, Slay Transportation is vicariously liable for Mr. Wilson's negligence, and that Slay Transportation's insurer, Discover, is also liable to the plaintiff.

While the defendants do not dispute the facts set forth above, they contend that there are genuine issues of material fact concerning the alleged comparative fault of the plaintiff and the alleged fault of the unidentified driver who allegedly distracted Mr. Wilson.  The defendants contend that these factual issues preclude summary judgment on the issue of liability.

---

[21]     Rec. Doc. 46-8 at 10, 21, 29, 44.

[22]     Rec. Doc. 46-4 at 2

For the following reasons, the undersigned finds that Mr. Wilson was solely responsible for causing the accident as a matter of law.  Further, the undersigned finds that Slay Transportation is vicariously liable for the negligence of Mr. Wilson and that Discover provides insurance coverage for the liability of Mr. Wilson and Slay Transportation.  Therefore, the undersigned recommends that summary judgment be entered in favor of the plaintiff on the issues of liability and insurance coverage.

## III.   SUMMARY JUDGMENT STANDARD

"A party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or any part of the claim."[23]   Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24]

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out

---

[23]     Fed. R. Civ. P. 56(b).

[24]     Fed. R. Civ. P. 56(c)(2).

specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."[25]

As summarized by the Fifth Circuit:

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.  However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.  Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted.[26]

The Supreme Court also provided guidance on the obligation of the non-moving party who bears the burden of proof at trial:

Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial."  The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit  Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.[27]

---

[25]    Fed. R. Civ. P. 56(e)(2).

[26]    *Lindsey v Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).

[27]    *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (internal citations and quotations omitted).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*****

[S]ummary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[28]

## IV.   APPLICABLE LAW AND ANALYSIS

This is a diversity suit regarding an automobile accident that occurred in Louisiana, and it is thus governed by Louisiana law.[29]  Under Louisiana law, a duty-risk analysis is used to determine liability in negligence cases such as this one.  Each and every one of five separate elements must be proven:  (1) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant's substandard conduct was a cause-in-fact of the

---

[28]      *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal citations and quotations omitted).

[29]      *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007); *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

plaintiff's injuries (the cause-in-fact element); (4) that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (sometimes also referred to as the scope of liability or scope of protection element); and (5) that the plaintiff actually suffered damages (the damages element).[30]  If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable.[31]

## A.   MR. WILSON WAS NEGLIGENT

In this case, the defendants do not – and cannot – argue that Mr. Wilson was not negligent or that his negligence did not cause the subject accident.  It is an undisputed fact that the traffic signal controlling Mr. Wilson's lane of travel turned red before he entered the intersection, but he failed to obey the red light and failed to stop his vehicle before proceeding through the intersection. The duty of a motorist approaching a red traffic signal is governed by La. R.S. 32:232, which reads as follows:

---

[30]    *Goins v. Wal-Mart Stores, Inc.*, 2001-0011 (La. 11/29/01), 800 So. 2d 783, 788; *Perkins v. Entergy Corp.*, 2000-1372 (La. 3/23/01), 782 So. 2d 606, 611; *Boykin v. Louisiana Transit Co., Inc.,* 96-1932 (La. 3/4/98), 707 So. 2d 1225, 1230; *Roberts v. Benoit,* 605 So. 2d 1032, 1051 (La. 1991); *Fowler v. Roberts,* 556 So. 2d 1, 4 (La. 1989)

[31]    *Duncan v. Kansas Southern Railway Co.*, 2000-0066 (La. 10/30/00), 773 So. 2d 670, 676; *Mathieu v. Imperial Toy Corp.,* 94-0952 (La. 11/30/94), 646 So. 2d 318, 326.

Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

*****

(3) Steady RED indication:

      (a)    Vehicular traffic facing a steady circular red signal alone shall stop at a clearly marked stop line, or if none, then before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection, and shall remai

The undisputed evidence is that Mr. Wilson had a red traffic light.  Under the cited statute, he had a duty to stop at the light. Mr. Wilson admitted that he was inattentive.[32]  He testified that there were no obstructions that prevented him from seeing the traffic signal.[33]  Since it is undisputed that he was inattentive, and his inattention resulted in his failing to stop at the light, he breached the duty he owed to the motoring public under the law.  But for Mr. Wilson's negligence, the collision would not have occurred.  Therefore, his failure to stop at the red light was a cause-in-fact of the accident.  Further, Wilson's truck was traveling at approximately 55 miles per hour when it struck the vehicle driven by the plaintiff's, who was injured

---

[32]      Rec. Doc. 46-4 at 12.

[33]      Rec. Doc. 46-4 at 0-11.

and taken to the hospital by ambulance.[34]  Consequently, the plaintiff has established all of the elements necessary to prevail, as a matter of law, on the issue of liability as against Mr. Wilson.

**B.**    **MR. DURAL WAS NOT NEGLIGENT**

Unable to dispute Mr. Wilson's negligence, the defendants argue instead that Mr. Wilson was not solely negligent, and that some percentage of fault should be allocated to the plaintiff, Mr. Dural, and also to the unidentified driver that allegedly distracted Mr. Wilson and caused him to be unaware that the light had turned red.

The defendants argue that, even though Mr. Dural was favored with a green light, he breached a duty by failing to maintain a general observation of the controlled intersection and failing to avoid the accident.  This misstates the applicable duty created by Louisiana law.  As articulated by Louisiana's Third Circuit Court of Appeal:

> A motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side of a red light will comply with the red light and respect his right-of-way.  The favored motorist is not obligated to look to his left or right before entering he intersection, and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so.  All

---

[34]        Rec. Doc. 46-4 at 10.

that is required is that the favored motorist maintain a general observation of the controlled intersection.[35]

Thus, Mr. Dural had no duty to look to his left or right to see whether a vehicle was not going to stop for the red light on Hwy. 90.  All he was obligated to was to maintain a general observation of the intersection.

This rule has been applied by Louisiana courts on numerous occasions.  In *Jenkins v. Rougeau*,[36] for example, the trial court found the plaintiff and the defendant each 50% at fault with regard to an intersectional collision.  When the appellate court reviewed the evidence, however, it found that the jury had concluded that the defendant had a green light but was negligent for failing to stop and avoid the collision as the plaintiff ran the red light.  The court said the jury's allocation of 50% fault to each driver

> indicates that while one of the parties entered the intersection under a red light, the party with the right-of-way failed to exercise sufficient caution to prevent the accident. We find that imposition of such a duty... is legal error.... [A] defendant with the right-of-way must only maintain a general observation of the intersection.[37]

---

[35]    *Jenkins v. Rougeau*, 97-257 (La. App. 3 Cir. 10/08/97), 702 So.2d 841, 843, *writ denied*, 1997-2849 (La. 01/30/98), 709 So.2d 715 [internal citations omitted].  See, also, *Sanchez Fernandez v. General Motors Corp.*, 491 So.2d 633, 636 (La. 1986); *Bourgeois v. Francois*, 161 So.2d 750, 753 (La. 1964); *Smith v. Regional Transit Authority*, 559 So.2d 995 (La. App. 4 Cir.), *writ denied*, 566 So.2d 986 (La. 1990).

[36]    Cited supra.

[37]    *Jenkins v. Rougeau*, 702 So.2d at 845.

The court reversed the jury's finding that the defendant was negligent and that her negligence was a proximate cause of the accident.[38]

A similar result was reached in *Baudoin v. Opie*.[39]  There, the defendant failed to stop at a red light and struck the plaintiff's vehicle in an intersection.  The jury found the defendant 90% at fault but assigned 10% comparative fault to the plaintiff.  The court stated that the record clearly showed that the plaintiff "did not look to either side, [but] was attentive to what was going on around him."[40]  He knew there was traffic waiting at the light, he knew there was a car behind him while he waited for the light to change, and he knew that traffic was facing him across the intersection.[41]  Furthermore, the plaintiff "was not aware of the vehicle that hit him until he had already begun to traverse the intersection and, at this point, it was too late to avoid the accident."[42]  The defendant argued, as do the defendants in the instant case, that the accident would have been avoided if the plaintiff had exercised the slightest bit of care as he crossed the intersection.  The appellate court was not

---

[38]     *Jenkins v. Rougeau*, 702 So.2d at 845.

[39]     96-269 (La. App. 3 Cir. 12/11/96), 685 So.2d 553.

[40]     *Baudoin v. Opie*, 685 So.2d at 556.

[41]     *Baudoin v. Opie*, 685 So.2d at 556.

[42]     *Baudoin v. Opie*, 685 So.2d at 556.

persuaded by that argument.  It held that the trial court erred in allocating fault to the plaintiff and reversed that decision.  The defendant was held 100% at fault.

A consistent decision was rendered in *Champagne v. McDonald*.[43]  In that case, Ms. McDonald, a respiratory technician, had been called to the hospital in the wee hours of the morning.  In her haste to get to the hospital, she was travelling at a high rate of speed and merely pausing at red lights.  As she did this, her vehicle collided with that of Mr. Champagne, who had entered an intersection on a green light.  After determining that Ms. McDonald was at fault, the court was also called upon to decide whether Mr. Champagne was at fault.  The court noted that a favored motorist is not obligated to look to his left or right before entering an intersection but must simply maintain a general observation of the intersection.[44]  More specifically, the court said:

> We thus conclude that as Champagne proceeded under the green light, he had a duty to maintain a general observation of the intersection, and to observe other traffic approaching him from his front, but not to be alert to the possibility of vehicles violating the red light from either side.[45]

The facts of these three cases are virtually identical to those presented in the instant case.  Louisiana jurisprudence consistently holds that, when a favored motorist

---

[43]      355 So.2d 1335 (La. App. 3rd Cir. 1978).

[44]      *Champagne v. McDonald*, 355 So.2d at 1344.

[45]      *Champagne v. McDonald*, 355 So.2d at 1344.

such as Mr. Dural enters an intersection on a green light, he has no duty to look to the left or right in order to avoid a collision with persons who may be running a red light controlling traffic on a perpendicular roadway.[46]  His duty is simply to be aware of his surroundings and to observe the traffic coming toward him from the direction opposite the direction in which he is traveling.

Here, no evidence was presented concerning whether Mr. Dural looked to his left or right before he entered the intersection.  But he had no duty to do so.  It is clear, however, that Mr. Dural did observe the traffic signal, stopped when it turned red, observed the traffic on Hwy. 90, remained stopped until after the signal turned green, checked his mirror to be sure his customers were still behind him, and only then did he proceed to enter the intersection.[47]  His actions satisfied the requirement that he generally observe the intersection.  Mr. Dural had no duty to do more than that.  In particular, he had no duty to look to his left in order to avoid colliding with Mr. Wilson's truck as it was running the red light.  Consequently, there is no basis for finding Mr. Dural at fault.

---

[46]     See, *Bourgeois v. Francois*, 161 So.2d at 753, and the cases that followed it.

[47]     Rec. Doc. 46-3 at 3.

## C.   THE UNIDENTIFIED DRIVER WAS NOT AT FAULT

The defendants argue that there is a genuine issue of material fact that precludes summary judgment on the issue of liability because "an unidentified driver may also be assessed some fault in the accident."[48]  Under Louisiana law, a distracted motorist such as Mr. Wilson is not absolved of liability.  To the contrary, "[i]f a motorist fails to see what he should have seen, the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen."[49]  Although many things can distract a motorist, he has a duty to keep his attention focused on the roadway.[50] Furthermore, the mere fact that a defendant motorist was distracted cannot serve as a basis for liability on the part of the person or entity that allegedly caused the distraction.[51]

---

[48]        Rec. Doc. 49 at 8.

[49]        *Fontenot v. Patterson Ins.*, 2009-0669 (La. 10/20/09), 23 So.3d 259, 269, quoting *Fernandez v. General Motors Corp.*, 491 So.2d 633, 636-637 (La. 1986).

[50]        *Hager v. State, ex rel. Dept. of Transp. and Development*, 2006-470 (La. App. 1 Cir. 01/16/08), 978 So.2d 454, 469-470, *writ denied*, 2008-0347 and 2008-0385 (La. 04/18/08), 978 So.2d 349; *Degges v. State ex rel. Dept. of Transp. and Development,* 40,112 (La. App. 2 Cir. 09/21/05), 911 So.2d 388, 392, *writ denied*, 2005-2423 (La. 03/24/06), 925 So.2d 1236; *Clark v. Mitchell*, 99-0720 (La. App. 1 Cir. 05/12/00), 760 So.2d 1236, 1242, *writ denied*, 00-2374 (La.11/3/00), 772 So.2d 660.  See, also, *Paul v. Louisiana State Employees' Group Ben. Program*, 99-0897 (La. App. 1 Cir. 05/12/00), 762 So.2d 136.

[51]        *Clark v. Mitchell*, 760 So.2d at 1242.

In *Clark v. Mitchell*,[52] the defendant failed to stop at a red light and hit the plaintiff's vehicle broadside.  The defendant claimed that he did not see the traffic signal because he was distracted by construction warning lights located beyond the intersection.  The trial court assigned 20% fault to T. L. James, the company that had erected the construction lights, but the appellate court reversed, stating that "[t]he mere fact that Mitchell was distracted by the lights cannot serve as a basis for James's liability"[53] and finding no other basis for liability on the part of T.L. James.

Although the defendants in this case characterize the behavior of the unidentified, allegedly distracting driver as "erratic,"[54] Mr. Wilson's deposition testimony does not suggest that the unidentified driver violated any traffic rules or did anything other than attempt to pass his vehicle.  When asked how the accident occurred, Mr. Wilson testified as follows:

A. Coming up 90, driving, paying attention to a car that was behind me.

Q. I noticed you complained to the police officer - - or you stated to the police officer that you had been watching a car on the side of your or in your vicinity.  What caused your attention to that particular vehicle?

A. They would come up like they wanted to pass me and then drop back.

---

[52] Cited supra.

[53] *Clark v. Mitchell*, 760 So.2d at 1242.

[54] Rec. Doc. 49 at 8.

-17-

Q.    They did that more than one time?

A.    Yes, sir.

Q.    Did that add some distraction to your driving?

A.    Just a little bit because I'm paying attention to the car to make sure - - I got to watch him.[55]

The only thing the defendants suggest the unidentified driver did that attracted Mr. Wilson's attention was that it did not stay a consistent distance away from Mr. Wilson's truck.  According to Mr. Wilson, the other vehicle, more than once, came closer to the truck, as though it were going to pass, and then it dropped back.  There is no evidence of negligence on the part on the unidentified driver; consequently, there is no basis for finding that the unidentified driver was liable for causing the accident.

When opposing a motion for summary judgment, the non-moving party must come forward with facts – not conclusory allegations – establishing a genuine and material controversy.  With regard to the alleged liability of the unidentified driver, the defendants have not done so.  They have not set forth any facts that would support a finding of liability on the part of that driver.  Consequently, they have not demonstrated that the plaintiff is not entitled to the judgment he seeks.

---

[55]    Rec. Doc. 46-4 at 7.

### D.   MR. WILSON'S EMPLOYER IS VICARIOUSLY LIABLE

It is an undisputed fact that Mr. Wilson was in the course and scope of his employment with Slay Transportation when the accident occurred.[56] Under Louisiana law, an employer is vicariously liable for the torts of its employees when the tort occurs in the exercise of the functions for which the employee is employed.[57] In other words, an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment.[58] The term "course of employment" refers to time and place, while the term "scope of employment" examines the employment-related risk of injury.[59] Thus, for the employer to be vicariously liable, the tortious conduct of the employee must be "so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared

---

[56]   Rec. Doc. 46-4 at 2.

[57]   Louisiana Civil Code Articl3 2320.  See, also, e.g., *Morgan v. ABC Manufacturer*, 1997-0956 (La. 05/01/98), 710 So.2d 1077, 1080; *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 475 (La. 1990).

[58]   *Baumeister v. Plunkett,* 95-2270 (La. 05/21/96), 673 So.2d 994, 996, citing *Orgeron v. McDonald*, 93-1353 (La. 07/05/94), 639 So.2d 224, 226.

[59]   *Benoit v. Capitol Manufacturing Co.*, 617 So.2d 477, 479 (La. 1993).

with conduct instituted by purely personal considerations entirely extraneous to the employer's interest."[60]

In this case, Mr. Wilson was executing his employment duties as a truck driver for Slay Transportation when the accident occurred.  He was "on the clock," transporting a vehicle in accordance with his employer's instructions, and the risk that he might be involved in a motor vehicle accident while performing those duties was a risk attributable to his employer's business.  Therefore, the undersigned finds that Slay Transportation is vicariously liable for causing the accident.

## E.   DISCOVER IS LIABLE FOR MR. WILSON'S NEGLIGENCE

A liability insurer, such as Discover, and its insureds, such as Mr. Wilson and Slay Transportation, are solidarily liable to the tort victim to the extent of the coverage afforded by the policy and to the extent of the policy limits.[61]  The relevant primary and excess insurance policies that were produced in support of the argument that Discover provides coverage for the subject accident designate Slay Transportation as the named insured and are written to provide liability coverage for

---

[60]    *Barto v. Franchise Enterprises Inc*., 588 So.2d 1353 (La. App. 2 Cir. 1991), *writ denied*, 591 So.2d 708 (1992), quoting *LeBrane v. Lewis*, 292 So.2d 216, 218 (La. 1974).

[61]    La. R.S. 22:1269; *Etienne v. National Auto. Ins. Co*., 99-2610 (La.4/25/00), 759 So.2d 51, 56.  See, also, William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice, in 15 Louisiana Civil Law Treatise § 28 (3d ed.2006).

vehicles owned by Slay Transportation and anyone operating those vehicles with the permission of Slay Transportation.[62]   No coverage dispute has been raised in this lawsuit.  Because Mr. Wilson, an insured under the policies negligently caused the accident, and because Slay Transportation is vicariously liable for his negligence, Discover is liable to the plaintiff up to its policy limits and in accordance with the coverages provided in the policies.

## CONCLUSION

The undersigned finds that defendant Christopher M. Wilson was inattentive as he drove along U.S. Hwy. 90 on March 23, 2007, and failed to notice that the traffic signal controlling his lane of travel had turned red.  The undersigned further finds that Mr. Wilson's negligence was the sole cause of the accident that occurred when Mr. Wilson's truck, travelling at 55 mph, plowed into the side of James Dural's vehicle after Mr. Dural entered the intersection on a green light.  The undersigned further finds that Mr. Wilson's employer, Slay Transportation, is vicariously liable for Mr. Wilson's negligence in causing the accident, and that Slay Transportation's insurer, Discover, is also liable, in accordance with the coverages afforded by its relevant insurance policies and subject to the policies' limits.  For these reasons, IT

---

[62]       Rec. Doc. 46-8 at 10, 21, 29, 44.

IS RECOMMENDED that Mr. Dural's motion for partial summary judgment be GRANTED and that judgment be entered in favor of the plaintiff, James Dural, and against the defendants, Christopher Wilson, Slay Transportation, and Discover Property and Casualty Insurance Company.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

**District Court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Thus done and signed this 14TH day of July, 2010 at Lafayette, Louisiana.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

-23-